1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

DONNA WESTFALL,

        Plaintiff,

  v.

THE CITY OF CRESCENT CITY, et al.,

        Defendants.

_____/

No. CV 10-5222 NJV

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS SECOND
AMENDED COMPLAINT, AND
GRANTING DEFENDANTS' MOTION
TO STRIKE PORTIONS OF THE
SECOND AMENDED COMPLAINT**

(Docket Nos. 49 & 50)

On May 26, 2011, this Court dismissed the first amended complaint filed by plaintiff Donna
Westfall, with leave to amend, and struck certain portions of that first amended complaint pursuant
to California's Anti-Strategic Lawsuit Against Public Participation (anti-"SLAPP") statute,
California Code of Civil Procedure § 425.16.  *See* Doc. No. 38.  Defendants Crescent City, Kelly
Schellong, Dennis Burns, Charles Slert, Bob Black, Rod Burns, and Kathryn Murray now move to
dismiss the Second Amended Complaint ("SAC") under Federal Rule of Civil Procedure 12(b)(6)
for failure to state a claim upon which relief can be granted.  Doc. No. 49.  Defendants again invoke
California's anti-"SLAPP" statute to strike the state law causes of action for intentional infliction of
emotional distress and defamation, and request attorneys' fees.  Doc. No. 50.  Having heard oral
argument on August 30, 2011, and after careful consideration of the arguments of the parties and the

1  papers submitted, and for good cause shown, the Court **grants** Defendants' motion to dismiss and

2  **grants** Defendants' motion to strike.

3  ## I. JURISDICTION

4  This is a 42 U.S.C. § 1983 action alleging violations of freedom of speech, due process, and

5  equal protection, along with state law causes of action for intentional infliction of emotional distress

6  and defamation.  This action was removed to this Court pursuant to 28 U.S.C. § 1441, as a case over

7  which this Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This Court

8  has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).  All parties

9  consent to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c).

10  ## II. BACKGROUND

11  As appropriate on a motion to dismiss, all well-pleaded allegations in the complaint are

12  assumed to be true.

13  Plaintiff, who is proceeding pro se, was elected as a city council member of Crescent City in

14  November 2008.  SAC ¶ 4.  As a council member, Plaintiff repeatedly and vigorously questioned the

15  City's transparency, accountability, and expenditure of public funds in its handling of the City's

16  Wastewater Treatment Plant ("WWTP") project.  *Id.*  Defendants Schellong, Burns, Slert, and

17  Murray are also elected city council members of Crescent City, who after conducting their own

18  investigation and relying on the conclusion of a grand jury, determined the WWTP project had been

19  handled properly.  SAC, Ex. I.  Defendant Butler is a former Crescent City Manager.  SAC ¶ 2.

20  Defendant Black is the City Attorney.  *Id.*

21  On March 2, 2009, Plaintiff and the other city council members approved a code of ethics.

22  SAC ¶ 5 & Ex. A ("Code of Ethics").  Plaintiff alleges that on September 8, 2009, Defendants

23  passed a resolution censuring her in retaliation for her criticism of the City's handling of the WWTP

24  project, her criticism of the City Council, and for "exposing corruptive practices."  SAC ¶ 32; *see*

25  *also id.* at ¶¶ 2, 15, 33.  The resolution, which is attached to the SAC as Exhibit J, censures Plaintiff

26  for breaching the City's Code of Ethics by: (1) knowingly using false, inaccurate, and/or partial

27  information to support Plaintiff's views regarding the WWTP; (2) treating "fellow city officials and

28  staff with lack of patience, courtesy and/or civility when in disagreement"; (3) not working "towards

**United States District Court**
For the Northern District of California

2

United States District Court
For the Northern District of California

consensus building"; (4) repeatedly exhibiting "discourtesy, disrespect and disregard towards council members, city department heads, staff and/or personnel in the performance of her official duties"; (5) using Plaintiff's position as an appointed representative of the city to promote her personal quilt show; (6) using Plaintiff's position as an appointed representative of the city "at the Intergovernmental Relations Committee (IGRC) to repeatedly slander, discredit and embarrass the City"; (7) continually demonstrating "a lack of concern for the proper use of city assets . . . in [Plaintiff's] continual misguided accusations associated with various aspects of the" WWTP; (8) abusing her position by "contacting lower-level City employees at their homes outside of work hours" in her "quest for 'evidence' to support her theories and claims of corruption and criminal misconduct"; and (9) continuing "to not be a prudent steward of city resources." SAC, Ex. J. The resolution censures Plaintiff and (1) prevents Plaintiff from placing agenda items regarding the WWTP "without the specific advance authorization of the full Council taken at an open meeting"; (2) directs independent contractors for the city not to expend billable time responding to Plaintiff's inquiries or data requests; and (3) removes Plaintiff as a representative or alternate on eight different committees. *Id.* The censure expired in November 2010, although Plaintiff was not aware of its expiration at the time and was informed by Defendants Black and Butler that the censure would need to be lifted by a vote of the council. SAC ¶ 23.

In October 2010, the city council issued a report in open session estimating the time and cost spent on responding to information requests by Plaintiff from November 2008 through June 2010. SAC ¶ 19 & Ex. L. The report estimated that $93,941 was spent on such requests. *Id.* Plaintiff alleges the report is inaccurate and overstates the cost the City actually incurred. *Id.*

Plaintiff presented a claim to the City on January 6, 2010, pursuant to California Government Code section 910 *et seq.*, alleging that the censure resolution violated her right to free speech and seeking damages for the violation. SAC, Ex. S. Six months after the City rejected her claim, Plaintiff filed this action in the Superior Court of Del Norte County on August 19, 2010. On November 17, 2010, Defendants removed the action to this Court. On May 26, 2011, this Court granted Defendants' motion to dismiss the first amended complaint, with leave to amend many of her claims, and also granted in part Defendants' motion to strike pursuant to California's anti-

United States District Court
For the Northern District of California

1  SLAPP statute.  Doc. No. 38.  Plaintiff filed her Second Amended Complaint on June 27, 2011

2  (Doc. Nos. 43-48), and on July 11, 2011, Defendants filed a second motion to dismiss and a second

3  motion to strike (Doc. Nos. 49 & 50).  Plaintiff failed to timely file oppositions to either motion.  As

4  Plaintiff is proceeding pro se, the Court nonetheless will consider her untimely oppositions.

5        In the SAC, Plaintiff continues to challenge her fellow council members' action in censuring

6  her and the actions taken against Plaintiff in the September 2009 resolution regarding placement of

7  agenda items, use of independent contractors, and committee removal.  Plaintiff also now challenges

8  statements made by Defendant Slert in the local newspaper; a request by Police Chief Plack to

9  interview Plaintiff; the opening of an investigation and file regarding Plaintiff; and statements by

10  Defendants Black and Butler regarding the censure.  Construing the allegations of the SAC liberally,

11  Plaintiff alleges five causes of action: (1) violation of her right to freedom of speech; (2) violation of

12  due process under the Fourteenth Amendment; (3) violation of equal protection under the Fourteenth

13  Amendment; (4) intentional infliction of emotional distress; and (5) defamation.

14        On August 30, 2011, the Court heard oral argument on the motion to dismiss the SAC and

15  the anti-SLAPP motion to strike.  Pursuant to Civil Local Rule 7-6, the Court received oral

16  testimony in connection with the motions.

17                                        **III.  DISCUSSION**

18      **A.**    **Legal Standard**

19        A complaint must contain a "short and plain statement of the claim showing that the pleader

20  is entitled to relief."  Fed. R. Civ. P. 8(a).  While Rule 8 "does not require 'detailed factual

21  allegations,'" a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim

22  to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949

23  (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  Facial plausibility

24  is established "when the plaintiff pleads factual content that allows the court to draw the reasonable

25  inference that the defendant is liable for the misconduct alleged."  *Id*.  "The plausibility standard is

26  not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

27  has acted unlawfully."  *Id.*  The plausibility standard requires a complaint to plead more than "facts

28  that are 'merely consistent with' a defendant's liability."  *Id.*

**United States District Court**
For the Northern District of California

1    Dismissal under Rule 12(b)(6) is appropriate if the complaint does not give the defendant fair

2    notice of a legally cognizable claim and the grounds on which it rests. *Twombly*, 550 U.S. at 555.

3    Dismissal of a complaint can be based on either the lack of a cognizable legal theory or the lack of

4    sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d

5    696, 699 (9th Cir. 1990). In considering whether the complaint is sufficient to state a claim, the

6    court will take all material allegations as true and construe them in the light most favorable to the

7    plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court need not accept

8    conclusory allegations as true. *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008).

9    Although the court is generally confined to consideration of the allegations in the pleadings, when

10   the complaint is accompanied by attached documents, such documents are deemed part of the

11   complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. *Durning v.*

12   *First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). The court also may disregard allegations

13   in the complaint that are contradicted by documents that are attached to the complaint. *See Hal*

14   *Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

15   The court construes the complaint liberally because it was drafted by a pro se plaintiff.

16   *Balistreri*, 901 F.2d at 699. When granting a motion to dismiss, the court is generally required to

17   provide pro se litigants with "an opportunity to amend the complaint to overcome deficiencies

18   unless it is clear that they cannot be overcome by amendment." *Eldridge v. Block*, 832 F.2d 1132,

19   1135-36 (9th Cir. 1987). In determining whether amendment would be futile, the court examines

20   whether the complaint could be amended to cure the defect requiring dismissal "without

21   contradicting any of the allegations of [the] original complaint." *Reddy v. Litton Indus., Inc.*, 912

22   F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended

23   complaint cannot allege facts inconsistent with the challenged pleading. *Id.* at 296-97.

24   **B.    First Cause of Action:  Free Speech**

25   Plaintiff's first cause of action is a 42 U.S.C. § 1983 claim alleging that in enacting the

26   censure, Defendants violated her First Amendment right to freedom of speech and retaliated against

27   her in violation of the First Amendment's right to freedom of speech.

28   In dismissing the FAC, this Court concluded that the censure in itself did not violate

5

United States District Court
For the Northern District of California

Plaintiff's free speech rights. *See* Doc. No. 38 at 6-8. Specifically, this Court concluded that the censure expressed the Council Members' disapproval of Plaintiff but did not impermissibly punish her or prevent her from expressing her freedom of speech. Although the censure also removed Plaintiff as a representative or alternate on eight different committees, the Court concluded that because Plaintiff was not an elected official to these committees, but rather was appointed to these committees as a city representative and/or alternate, the council was within its discretion to remove her from that position and doing so did not limit Plaintiff's freedom of speech. *See* Doc. No. 38 at 6-8. The censure also prevented Plaintiff from placing agenda items regarding the WWTP "without the specific advance authorization of the full Council taken at an open meeting" and directed independent contractors for the city not to expend billable time responding to Plaintiff's inquiries or data requests. The Court concluded that these measures were not punishments or penalties and also did not limit Plaintiff's freedom of speech because they did not prevent Plaintiff "from performing her official duties or restrict her opportunities to speak, such as her right to vote as a Board member, her ability to speak before the Board, or her ability to speak to the public." *See Phelan*, 235 F.3d at 1248. Therefore, the Court dismissed Plaintiff's § 1983 claim because the censure did not punish or penalize Plaintiff's free speech rights.

Although the SAC includes additional details regarding the censure and Plaintiff's investigation of the WWTP, her First Amendment rights claim continues to be based on the censure. Indeed, some of the new factual allegations actually defeat her arguments that the censure chilled her First Amendment rights. For example, Plaintiff admits that she "can attend meetings, vote, attend board meetings and continues in her official capacity as a Council member." SAC ¶ 34.[1] The

---

[1] In that same paragraph, Plaintiff alleges that Defendants have refused to place her items on the City Council's agenda and that she "is informed by Defendants that if she has questions in regards to WWTP and the finances, she is to address those questions behind closed doors and not in view of the public." SAC ¶ 34. Defendants may indeed have refused to place her items on the agenda, but the documents that Plaintiff has attached to the SAC undermine her allegations that they require her to address questions behind closed doors, as the censure requires Plaintiff to seek approval from the full Council to place items regarding WWTP's financing on the agenda, and directs that such permission shall be sought in an open meeting. SAC, Ex. J. Similarly, although Plaintiff alleges that the censure "mak[es] impossible Plaintiff's ability to perform her official duties and capacities to obtain information" (SAC ¶ 35), the censure only prevents contractors from spending billable time to provide information to Plaintiff (SAC, Ex. J). She is nonetheless able to direct questions and requests for documents to the City Manager (SAC, Ex. I at 8), and to review documents that already have been

6

censure is intended to prevent Plaintiff from disrupting, disturbing or otherwise impeding the orderly conduct of future council meetings by repeatedly discussing concerns the remaining council members believe have been investigated and addressed.  As such, the censure is an acceptable limit on her freedom of speech, especially in the context of the more structured council meeting environment.  *See White v. City of Norwalk*, 900 F.2d 1421, 1444-1426 (9th Cir. 1990) (city ordinance allowing removal of persons who disrupt, disturb or otherwise impede orderly conduct of council meetings not overly broad and not violation of First Amendment rights).  Thus, to the extent this cause of action is based on the censure itself, the Court dismisses it, with prejudice, as Plaintiff still fails to allege facts sufficient to state a claim.

In dismissing the FAC, the Court did not reach the retaliation claim that Plaintiff now articulates.  To state such a claim, Plaintiff must allege that (1) she engaged in constitutionally protected activity; (2) as a result she was subjected to adverse action by the Defendants that would chill a person of ordinary firmness from continuing to engage in that protected activity; and (3) there was a substantial causal relationship between the protected activity and the adverse action.  *Blair v. Bethel School Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (no retaliation claim where procedurally proper removal as vice president of school board did not affect the "full range of rights and prerogatives" that came with being elected and thus the removal did not chill his speech).[2]  This Court already concluded that the censure did not "prevent Plaintiff 'from performing her official duties or restrict her opportunities to speak, such as her right to vote as a Board member, her ability to speak before the Board, or her ability to speak to the public.'"  Doc. No. 38 at 9 (quoting *Phelan*, 235 F.3d at 1248).  This is a reasonable limitation on her freedom of speech (*see White*, 900 F.2d at 1424-26) and does not "chill" her freedom of speech.

_____

collected.  The censure only prevents Plaintiff from unilaterally incurring costs the City will need to pay relating to her investigative efforts.

    [2]  Plaintiff contends the censure was not procedurally proper because it was imposed "without a previous investigation, policies, regulations, procedures or law to conduct such a hearing, without any adjudicative process."  Doc. 62 at 6-7.  Plaintiff cites no authority in the opposition to the motion to dismiss for the proposition that a city council must have a policy before censuring a council member, and the Court has found none.  (*Braun v. Taft*, 154 Cal. App. 3d 332 (1984), which Plaintiff cites in the SAC, has no application to the facts of this case.)  Plaintiff's contention that the censure violated her due process rights is addressed in Section C1, *infra*.

7

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Moreover, although Plaintiff had a First Amendment right to raise her concerns about the

2    WWTP, her fellow Council members had a corresponding First Amendment right to "vot[e] their

3    conscience on the important issues" they identified in the censure resolution.  *Blair*, 608 F.3d at 544

4    (noting that "adverse action" taken by "peers in the political arena" requires a different analysis than

5    in typical First Amendment retaliation cases).  Indeed, "[a] legislative body does not violate the First

6    Amendment when some members cast their votes in opposition to other members out of political

7    spite or for partisan, political, or ideological reasons."  *Id*. at 546 (quoting *Zilich v. Longo*, 34 F.3d

8    359, 361 (6th Cir. 1994)).  The censure voiced the opinion of other Council members that Plaintiff

9    violated the Code of Ethics and their desire that she not do so again in the future, and it put in place

10   measures to contain the cost of Plaintiff's future investigative efforts and ensure the orderly and

11   efficient conduct of future council meetings.  At least in the political arena, this does not amount to

12   retaliation in violation of the First Amendment.  *Blair*, 608 F.3d at 546.  Plaintiff's own admission

13   and the documents she attached to the SAC would make any amendment futile, as they demonstrate

14   that the censure did not prevent Plaintiff from carrying out her duties as an elected official.  The

15   Court accordingly dismisses Plaintiff's retaliation claim with prejudice.

16   The SAC also mentions in passing the Brown Act, California Government Code § 54950, *et*

17   *seq*.  SAC ¶ 38.  In dismissing the FAC, the Court concluded that Plaintiff's failure to allege that the

18   city council held closed proceedings and her failure to allege that she made a written demand of the

19   city council to cure the alleged violation, as is required by California Government Code §

20   54960.1(b), defeated any claim under the Brown Act.  *See* Doc. No. 38 at 9-10.  Plaintiff still does

21   not include these two allegations in the SAC.  In light of the fact Plaintiff has been given leave to

22   amend to allege these specific elements of a Brown Act claim, the Court dismisses with prejudice

23   any portion of the first cause of action that is based on the Brown Act.

24   Plaintiff's contentions that the censure is improper because the City lacks a censure policy

25   and that the City selectively enforced the censure are addressed as part of the Court's analysis on the

26   Due Process and Equal Protection causes of action.

27   **C.    Second Cause of Action:  Due Process**

28   The second cause of action alleges a section 1983 claim for violation of due process under

8

**United States District Court**
For the Northern District of California

the Fourteenth Amendment. Plaintiff appears to allege that her rights were violated because the City Council does not have a policy governing the censure of a city council member, that Defendants did not give Plaintiff notice of the censure, and did not give Plaintiff the opportunity to be heard before the censure. SAC ¶¶ 38, 43, 53, 56. Plaintiff also alleges that Defendants directed Doug Plack, the City's Chief of Police, "to order Plaintiff to the Police Station for questioning and interrogation" without "probable cause" and where "no criminal conduct had taken place." SAC ¶¶ 16, 58. She alleges that she "sustain[ed] substantial losses in her earnings and other employment benefits and continues to suffer personal humiliation, impairment of reputation, emotional distress, loss of consortium, mental and physical pain and anguish." SAC ¶ 59.

The Fourteenth Amendment protects against the deprivation of property or liberty without procedural due process. The procedural guarantees apply only when a constitutionally protected liberty or property interest is at stake. *See Ingraham v. Wright*, 430 U.S. 651, 672-73 (1977); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 577 (1972); *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003).

  1.   The Censure

As it did with the FAC, the Court construes Plaintiff's claim regarding the censure as a "stigma- plus" due process claim based on a claimed liberty interest in her reputation. *See* Doc. No. 38 at 10-11 (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). To plead a stigma-plus claim, Plaintiff must allege that she (1) suffered from stigma (i.e., loss of reputation); (2) suffered an additional injury (the "plus" element) that was "directly caused by the Government, rather than an injury caused by the act of some third party [in reaction to the Government's defamatory statements]"; and (3) she received inadequate process. *See American Consumer Pub. Ass'n, Inc. v. Margosian*, 349 F.3d 1122, 1125-26 (9th Cir. 2003) (quoting *WMX Techs.*, 80 F.3d at 1320); *see also Paul*, 424 U.S. at 701, 711; *Zutz v. Nelson*, 601 F.3d 842, 849 (8th Cir. 2010); *Monserrate v. New York State Senate*, 599 F.3d 148, 158-59 (2d Cir. 2010) ("adequate process defeats a stigma-plus claim"); *Little v. City of North Miami*, 805 F.2d 962, 969 (11th Cir. 1986) (holding that § 1983 due process claim was sufficiently pled based on allegations that city council issued its censure of the plaintiff law professor without any notice or a hearing). Allegations of psychological trauma, humiliation,

9

**United States District Court**
For the Northern District of California

1   embarrassment, and emotional distress are not sufficient to satisfy the stigma-plus test.  *See Krainski*

2   *v. Nevada ex rel. Bd. of Regents of Nevada System of Higher Educ.*, 616 F.3d 963, 971 (9th Cir.

3   2010) (affirming dismissal of § 1983 action because the plaintiff only alleged reputational injury and

4   loss of future income, which were insufficient to satisfy the stigma-plus test).  The Court previously

5   dismissed this cause of action because the FAC failed to allege that the City had *directly* caused

6   Plaintiff's injury.  Doc. No. 36 at 11-12 (noting it was unclear whether Plaintiff alleged that the

7   "substantial losses in her earnings and other employment benefits" were directly caused by

8   Defendant City).

9          The SAC fails to cure this deficiency.  Plaintiff alleges that she is a medical specialist who

10  helps elderly clients qualify for medical care, and that she meets clients in a number of ways,

11  including by making presentations at nursing homes, assisted living facilities, and senior centers.

12  SAC ¶ 27.  She alleges that she lost business opportunities because after the censure and its

13  aftermath (including negative public comments by several Defendants), she was no longer welcome

14  to give presentations at one nursing home.  *Id.*  Plaintiff, however, still fails to allege that the actions

15  of the City Council *directly* caused the nursing home to stop welcoming her.  *See* Doc. No. 38 at 11-

16  12.  The SAC still does not allege that the injury was "directly caused by the Government, rather

17  than an injury caused by the act of some third party [in reaction to the Government's defamatory

18  statements.]"  *American Consumer Pub. Ass'n*, 349 F.3d at 1125-26.  On the contrary, Plaintiff

19  acknowledges that she lost business because third parties reacted to the Defendants' public

20  comments, which she believes "started a barrage of discontent within the city and citizens of

21  Crescent City."  SAC ¶ 27.  Plaintiff's allegation that Defendant Murray is on the board of the local

22  senior center suggests that Defendant Murray would be in a position to cause the senior center to cut

23  its business ties with Plaintiff, but Plaintiff does not allege that Defendant Murray in fact did so.

24  Moreover, Plaintiff acknowledges that she was "never allow[ed] to give seminars" at the senior

25  center in the past, thus the censure or any conduct by Defendants did not cause her loss of business

26  with that particular senior center.  Finally, Plaintiff's allegations of emotional distress and anguish

27  are insufficient to satisfy the stigma-plus test.  *See Krainski*, 616 F.3d at 971.

28

**United States District Court**
For the Northern District of California

1    The SAC also fails to plead facts showing that Plaintiff was deprived of "due process."

2    Neither party has cited, and the Court has not found, any required procedures city councils must

3    follow or policies they must adopt before censuring council members.  In any event, Plaintiff

4    received notice of the Council's decision to vote to censure her at an upcoming public meeting (Doc.

5    62 at 6; *see also* SAC ¶ 6 & Ex. I), communicated with Defendant Black regarding the procedural

6    mechanism for the sanction (SAC, Ex. V), and attended the public meeting where the remaining

7    Council members unanimously voted to censure her (SAC, ¶ 64 & Ex. J).  The documents Plaintiff

8    attached to her SAC show that Plaintiff was censured for conduct that other council members

9    observed directly on a number of occasions, and noted both in the minutes of an open meeting and in

10   the censure itself.  *See, e.g.*, SAC, Exs. I-J.  No further "investigation" was necessary.

11   The Court gave Plaintiff leave to amend to plead specifically the direct causation required by

12   the stigma plus test, and she has failed to do so.  Also, Plaintiff still fails to plead fact showing she

13   was not given notice of and opportunity to be heard regarding the censure.  Plaintiff's due process

14   claim based on the censure and its aftermath is dismissed, with prejudice.

15       2.       Questioning by Chief of Police

16   Plaintiff appears to allege that Defendants deprived her of her liberty without due process

17   when they caused Police Chief Doug Plack to question Plaintiff regarding the conduct of two

18   audience members at a City Council meeting.  SAC ¶¶ 16, 63.  She alleges that Plack called her at

19   home and requested she appear for questioning at his office.  Plaintiff did so, voluntarily, and

20   accompanied by her attorney.  Plaintiff does not allege that Plack told her the interview was

21   mandatory, detained her or prevented her from leaving at any point during the questioning.  The

22   interaction with Plack that Plaintiff describes in the SAC did not deprive her of her right to liberty.

23   To determine whether Plaintiff could plead facts to state a claim if she were given leave to

24   amend, the Court received oral testimony from Plaintiff at the hearing regarding the interview with

25   Plack.  *See* Civil Local Rule 7-6.  Consistent with the allegations of the SAC, Plaintiff testified that

26   Plack called her and asked her to come to his office for an interview.  When Plaintiff then referred to

27   the interview as an "interrogation," the Court asked Plaintiff to explain what she meant by that term.

28   Plaintiff clarified that Plack "just [asked] questions," and that it was "a discussion" with the Chief of

1    Police.  According to Plaintiff, Plack did not threaten her with incarceration.  Plack also did not

2    suggest Plaintiff should refrain from asking questions at City Council meetings.  Based on Plaintiff's

3    allegations in the SAC and her further descriptions at the hearing, the interview was nothing more

4    than a "discussion" with Plack that Plaintiff attended voluntarily and with counsel.  Thus, it does not

5    appear that Plaintiff could plead any set of facts to state a claim that she was unlawfully detained.

6    The due process claim based on Plaintiff's "discussion" with Chief of Police Plack is dismissed with

7    prejudice.

8    **D.        Third Cause of Action:  Equal Protection**

9        The third cause of action alleges a section 1983 claim for violation of equal protection under

10   the Fourteenth Amendment.  The Equal Protection Clause guarantees, "No state shall ... deny to any

11   person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

12       As it did with the FAC, the Court construes the allegations of the SAC liberally and

13   interprets this cause of action as a "class of one" equal protection claim.  "The Supreme Court has

14   recognized that 'an equal protection claim can in some circumstances be sustained even if the

15   plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally

16   singled out as a so-called 'class of one.'"  *Gerhart v. Lake County, Montana*, 637 F.3d 1013, 1021

17   (9th Cir. 2011) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)).  To plead a

18   "class of one" claim, Plaintiff must allege that Defendants:  (1) intentionally (2) treated Plaintiff

19   differently than other similarly situated city council members, (3) without a rational basis.  *See id.*

20   The Court dismissed this claim in the FAC because Plaintiff had not alleged the second prong, *i.e.*,

21   that she was treated differently than other Council members.

22       Plaintiff now does allege that she was treated differently than other Council members who

23   violated the Code of Ethics but were not censured.  SAC ¶ 42.  She also alleges that the Council

24   adopted the Code of Ethics specifically to punish her and hinder her efforts to investigate the

25   WWTP.  SAC ¶ 53.  Even accepting these conclusory allegations as true, Plaintiff still fails to allege

26   facts sufficient to show that the other Council members were similarly situated.  The documents

27   Plaintiff attached to her SAC show that Plaintiff was censured after repeatedly asking the same

28   questions from Council members without inspecting the documents that had been made available to

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1   her for the purpose of answering her earlier questions regarding the WWTP, implying the Director

2   of Public Works and a Council member were receiving "kickbacks" from subcontractors on the

3   WWTP project, accusing the Council of either "incompetence or collusion," allegedly costing the

4   City $37,900 by asking staff and attorneys to respond to numerous requests, calling City employees

5   at home outside of work hours, and taking up Council time to repeatedly discuss the WWTP project.

6   *See* SAC, Exs. A, I, J, L. These documents show that Council members who "rolled their eyes"

7   were not "similarly situated" to Plaintiff. *See Squaw Valley Development Co. v. Goldberg*, 375 F.3d

8   936, 944 (9th Cir. 2004) (overruled on other grounds) (rejecting plaintiff's attempt to compare itself

9   to class of other similarly situated landowners because there was no evidence other landowners were

10  as large, had same history of non-compliance, or same level of activity and thus plaintiff was not

11  comparing "apples to apples"). The fact these two Council members were not censured therefore

12  does not state a claim that Plaintiff was disparately treated.[3]

13      Because Plaintiff still has failed to plead facts showing that she was similarly situated to any

14  class, her equal protection claim is dismissed, with prejudice.

15  **E.      Fourth Cause of Action: Intentional Infliction of Emotional Distress**[4]

16      The fourth cause of action alleges intentional infliction of emotional distress ("IIED") by

17  Defendants through the censure, statements by Council members, editorials by Council member

18  Slert in the local newspaper, emails from Defendants Black and Butler, questioning by Police Chief,

19  and the alleged opening of a "file" regarding Plaintiff by or for the District Attorney. SAC ¶¶ 63-67.

20  To raise a cause of action for intentional infliction of emotional distress, the complaint must allege:

21

22

23      [3]  Plaintiff also has not negated the existence of a rational basis for the censure, which she must
    do to state a "class of one" claim. *See Johnson v. Rancho Santiago Community College Dist.*, 623 F.3d
24  1011, 1031 (9th Cir. 2010). On the contrary, the documents Plaintiff attached to the SAC conceivably
    show that the censure was enacted for the rational purposes of preserving City resources and promoting
25  civility at Council meetings, which would meet the "very lenient" rational basis inquiry. *See RUI One
    Corp. v. City of Berkeley*, 371 F.3d 1137, 1156 (9th Cir. 2004). However, Plaintiff has alleged that the
26  rationale was pretextual and animated by an impermissible retaliatory motive to punish her for
    investigating the WWTP and revealing corruption. Even though she has not negated the existence of
27  a rationale basis for the censure, Plaintiff could still establish a "class of one" claim by showing that
    Defendants' rational basis was pretextual. *See Squaw Valley Development*, 375 F.3d at 944.

28      [4]  As described in more detail in Section G below, portions of the IIED cause of action are
    stricken pursuant to California's anti-SLAPP statute.

13

"(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." A defendant's conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." And the defendant's conduct must be "intended to inflict injury or engaged in with the realization that injury will result."

*Hughes v. Pair*, 46 Cal.4th 1035, 1050-51 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001 (1993)) (internal citations omitted).

In dismissing the FAC, the Court concluded that Plaintiff had failed to sufficiently plead extreme and outrageous conduct by Defendants. Defendants' conduct relating to the censure, as alleged, was not "outrageous" because their conduct was not "so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'" *Id*. The Court also noted that even if Plaintiff amended the FAC to plead extreme and outrageous conduct, to the extent that Plaintiff's IIED claim was based on Defendants' communications during or in preparation for city council meetings, such communications are privileged under California Civil Code § 47. *See Cayley v. Nunn*, 190 Cal. App. 3d 300, 303 (1987); *Scott v. McDonnell Douglas Corp.*, 37 Cal. App. 3d 277, 285-86 (1974) ("The reading of the letters at the City Council meeting was privileged, as was the distribution of copies of the letters to members of the audience (including the press) attending the Council meeting"). Section 47 privilege applies to most torts, including defamation and intentional infliction of emotional distress. *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1241-42 (2007). Therefore, under section 47, Defendants would be immune from liability for the IIED claim for Defendants' covered communications. *See id*. The Court cautioned Plaintiff to amend the FAC to correct the deficiencies in her IIED claim only if a) she could plead extreme and outrageous conduct by Defendants; *and* b) Plaintiff's IIED claim was *not* based on Defendants' communications made during or in preparation for city council meetings, which are privileged under section 47.

    1.    <u>Statements by Defendants Schellong, Burns, Murray, Slert, Black and Butler</u>

None of the statements Plaintiff has alleged to have been made by her fellow Council members amount to extreme or outrageous conduct. The editorials by Defendant Slert are strongly worded, but are neither extreme nor outrageous (*see* SAC, Exs. K-K2). Moreover, the remaining

14

1   statements Plaintiff references were made in preparation for or during Council meetings by Council

2   members and Defendants Black and Butler, or are part of the censure itself, and as such, they are

3   privileged.  *See* SAC ¶¶ 15, 19, 23, 63-64 & Exs. C, C1, I, J.  Plaintiff appears to contend the

4   statements Defendants Black and Butler made regarding the censure are outrageous because they

5   intentionally misrepresented the expiration date and status of the censure.  The documents Plaintiff

6   attached to the SAC, however, demonstrate that Defendant Butler qualified his response and

7   described it as his "Dr. Phil advice" to Plaintiff -- hardly legal advice or a definitive interpretation of

8   the matter.  SAC, Ex. C.  Defendant Black's only statement was that the censure would need to be

9   lifted by a vote of the Council.  *Id*.  While Defendants Butler and Black were mistaken, their

10  responses do not qualify as extreme our outrageous statements.  Accordingly the Court dismisses

11  with prejudice the IIED claim based on any statements made during or in preparation of a Council

12  meeting, including the censure itself, and made in editorials by Defendant Slert.

13          2.      Questioning by Chief of Police and Investigation by Government Officials

14          Plaintiff's allegation regarding the "intimidation tactics" and the intent of the District

15  Attorney to charge her with "bogus felony counts" (SAC ¶ 67) is merely conclusory and

16  unsupported by any factual allegations (and indeed, pleaded on information and belief, SAC ¶ 28),

17  and need not be taken as true by this Court on a motion to dismiss.  As described above, the Court

18  took oral testimony from Plaintiff at the hearing regarding her interview with Plack.  The Court also

19  took oral testimony regarding Plaintiff's allegations of harassment with respect to the "file" she

20  referred to in the SAC.  Plaintiff again referred to "intimidation tactics" but could not provide any

21  facts to support her contentions that Plack, the District Attorney, or any other official took any

22  actions to intimidate or harass her.  No one in the Police Department, District Attorney's Office, or

23  any other government office threatened Plaintiff with arrest or investigation.  When the Court

24  summarized Plaintiff's allegations regarding the investigation as "pure speculation," Plaintiff replied

25  that it was "a little more than pure speculation" as her belief was based on statements other

26  individuals had made to her about statements or conduct by the police or District Attorney.  Based

27  on the allegations of the SAC, Plaintiff's oral testimony at the hearing, and the fact Plaintiff so far

28

1   has not been prosecuted, the Court concludes that Plaintiff cannot plead facts that state a claim for

2   IIED based on any alleged investigation or based on malicious prosecution.

3          Moreover, California Government Code § 821.6 shields public officials from liability for

4   conduct committed in the course of instituting administrative or judicial proceedings, including

5   preliminary investigations. *See Amylou R. v. County of Riverside*, 28 Cal. App. 4th 1205, 1208-1210

6   (1994) ("Because investigation is an 'essential step' toward the institution of formal proceedings, it

7   is 'also cloaked with immunity'").  Even if Plaintiff could plead facts that stated a claim for IIED

8   based on any investigation, Defendants will be able to invoke California Government Code § 815.2

9   as a defense to Plaintiff's IIED claim, as this section shields public entities from liability for any

10  injuries caused by employees within the scope of their employment.  *Id*.  Sections 815.2 and 821.6

11  thus would bar any IIED claim based on the malicious prosecution of Plaintiff.[5]

12         The SAC does not state a claim for IIED.  Based on Plaintiff's oral testimony at the hearing,

13  it appears that Plaintiff cannot plead any set of facts based on the interview or the alleged

14  investigation that would state a claim for IIED.  The Court accordingly dismisses with prejudice the

15  IIED claim based on the alleged investigation of Plaintiff and the in person interview with Plack.

16  **F.      Fifth Cause of Action:  Defamation[6]**

17         Although the FAC did not include a separate claim for defamation, the Court dismissed with

18  prejudice any defamation claim based on Defendants' communications made during or in

19  preparation for Council meetings, which are privileged under California Civil Code § 47.  Doc. No.

20  38 at 14-15. The SAC now includes a separate claim for defamation, based on Defendant Slert's

21  editorials in the local newspaper (SAC ¶¶ 72-73) and Defendant Schellong's comments during a

22  council meeting and a town hall meeting (SAC ¶ 76).  As noted above, Defendant Schellong's

23  comments are absolutely privileged under section 47.  Defendant Slert's *editorials* contain

24  statements of opinions that cannot form the basis for a defamation claim.  *See Information Control*

25

26         [5]   Section 821.6, however, would not shield Defendants from an IIED claim based on unlawful
        detention.  *See Amylou R.*, 28 Cal. 4th at 1211 n.2.  As described above, the interview does not
27      constitute a basis for an IIED claim based on unlawful detention or otherwise.

28         [6]   As described in more detail in Section G below, the defamation cause of action is stricken
        pursuant to California's anti-SLAPP statute.

United States District Court
For the Northern District of California

*Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980) (statements made in heated public debate where "an audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole" are not defamatory statements).  One of the editorials (SAC, Ex. K-1) criticizes the campaign Plaintiff started to recall Slert, and two of the editorials (SAC, Exs. K-1 & K-2) are responses by Slert to Plaintiff's prior public statements. These squarely fall within the type of "heated public debate" at issue in *Information Control*. *Supra*, 611 F.2d at 784; *see also Matson v. Dvorak*, 40 Cal. App. 4th 539, 548 (1995) ("The right to speak on political matters is the quintessential subject of our constitutional protections of the right of free speech").  Plaintiff alleges Slert's editorial is defamatory because it states Plaintiff has not generated any cost savings or refunds to the City.  SAC ¶ 73.  But Plaintiff does not allege the City in fact did receive any funds as a result of her conduct; she alleges that the City *would* have received $174,000 in penalties *if* it had pursued some action against the contractor.  SAC ¶ 72.  This is a conclusory and speculative allegation that the Court need not accept as true on a motion to dismiss.[7]  The SAC therefore does not state facts sufficient to show that Defendant Slert's statements regarding cost savings could form a basis for Plaintiff's defamation claim.  The Court already granted Plaintiff leave to amend her complaint to attempt to state a claim for defamation if Plaintiff could allege statements that are not privileged pursuant to section 47.  Plaintiff has failed to do so, and her defamation claim is dismissed with prejudice for failure to state a claim.

**G.    Motion to Strike:  Anti-SLAPP**

Defendants move to strike Plaintiff's state law claims for intentional infliction of emotional distress and for defamation pursuant to California's anti-SLAPP statute.  *See* Cal. Code Civ. Proc. § 425.16.  "SLAPP" is an acronym for "strategic lawsuit against public participation."  Section 425.16(b)(1) of the California Code of Civil Procedure provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the

---

[7]  Indeed, the speculative nature of this allegation is underscored by an email from the Business Representative for IBEW Local 551 to Plaintiff (attached as Exhibit O to the SAC).  In his email, the Business Representative warns Plaintiff that the City may have lost the right to an award as a result of its "own Labor Compliance Program fail[ing] to recognize and correct the violations."  *Id.*

**United States District Court**
For the Northern District of California

1  court determines that the plaintiff has established that there is a probability that the plaintiff
2  will prevail on the claim.

Public entities such as Defendant City may move to strike under the anti-SLAPP protections of

3  section 425.16. *Vargas v. City of Salinas*, 46 Cal.4th 1, 18 (2009).

4

5       Plaintiff argues the Court should deny the motion to strike because the anti-SLAPP statute
   does not apply in federal court and does not apply to governmental actors. Neither of these
6
   arguments has merit. First, it is well settled that California's anti-SLAPP statute is available in
7
   federal court. *See United States v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir.
8
   1999). Second, accepting only for purposes of this motion that Plaintiff is proceeding as a
9
   governmental actor, the anti-SLAPP statute only excludes from its ambit "enforcement actions
10
   brought in the name of the people of the State of California by the Attorney General, district
11
   attorney, or city attorney, acting as public prosecutor." Cal. Code Civ. Proc. § 425.16(d). Plaintiff's
12
   lawsuit is not an enforcement action, and Plaintiff is not acting as a public prosecutor. Defendants'
13
   position regarding the anti-SLAPP statute thus is well taken.
14
       In ruling on a motion to strike under section 425.16, the court engages in a two-step process:
15
   (1) "the court decides whether the defendant has made a threshold showing that the challenged cause
16
   of action is one arising from protected activity"; and (2) if the defendant has made this threshold
17
   showing, the court "then determines whether the plaintiff has demonstrated a probability of
18
   prevailing on the claim." *Vargas*, 46 Cal.4th at 16 (quoting *Taus v. Loftus*, 40 Cal.4th 683, 703
19
   (2007)).
20
       1.    Protected Activity
21
       Plaintiff's state law causes of action are based on the censure, statements by council
22
   members, statements Defendants Black and Butler in emails to Plaintiff regarding the censure, being
23
   questioned by Police Chief Plack, a "file" regarding Plaintiff, and Defendant Slert's editorials in the
24
   local paper.
25
       With respect to the censure, statements by council members in connection with council
26
   meetings, and statements made by Defendants Black and Butler to Plaintiff in preparation for
27
   council meetings, Defendants have made their threshold showing that the IIED and defamation
28
   causes of action arise from Defendants' protected activity. The California Supreme Court has held

**United States District Court**
For the Northern District of California

1   that "statements made and actions taken in local legislative proceedings before the city council"

2   constitute "protected activity" under the first step of the anti-SLAPP analysis. *Vargas*, 46 Cal.4th at

3   19; *see* Cal. Code Civ. Proc. § 425.16(e)(1).

4          Defendant Slert's editorials in a local newspaper regarding Plaintiff's conduct in city council

5   meetings, her efforts to recall him, and the City's estimate of the costs to taxpayers incurred by the

6   City to respond to Plaintiff's requests also constitute "protected activity" because they were "made

7   in connection with an issue under consideration or review" by the city council. Cal. Code Civ. Proc.

8   § 425.16(e)(2); *see* SAC, Exs. K, K-1 & K-2.

9          The opening of a "file" investigating Plaintiff, as pleaded, also qualifies as "protected

10  activity." *See Schaffer v. City & County of San Francisco*, 168 Cal. App. 4th 992, 1004 (2008)

11  (anti-SLAPP suit protected communications among government officials regarding pending

12  investigation).

13          2.    Probability of Prevailing

14          Defendants having established the required threshold showing under the first step, the court

15  "then determines whether the plaintiff has demonstrated a probability of prevailing on the claim."

16  *Vargas*, 46 Cal.4th at 16. The plaintiff "must demonstrate that the complaint is both legally

17  sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment

18  if the evidence submitted by the plaintiff is credited." *Id.* at 20. As described above, the SAC is not

19  legally sufficient as to Plaintiff's IIED or defamation causes of action. Because the Court dismissed

20  both causes of action with prejudice for failure to state claims upon which relief could be granted,

21  Plaintiff has therefore not met her burden under the second step.

22          3.    Notice to Judicial Council

23          The anti-SLAPP statute requires Defendants promptly to transmit to the Judicial Council a

24  copy of the caption page of their motion to strike. Cal. Code Civ. Proc. § 425.16(j)(1). Defendants

25  provided this notice on July 13, 2011. Doc. No. 67.

26          4.    Attorneys' Fees and Costs

27          Defendants are entitled to their attorneys' fees and costs. Cal. Code Civ. Proc. §

28  425.16(c)(1). Defendants are also entitled to the fees and costs they incurred with respect to the

United States District Court

For the Northern District of California

motion to strike the IIED claim Plaintiff alleged in the first amended complaint.  Defendants are

ordered to submit their request for attorneys' fees and costs, which should be limited to the fourth

cause of action for IIED (in the FAC and in the SAC) and the fifth cause of action for defamation (in

the SAC).   Defendants must submit documentation identifying the time expended, applicable hourly

rates, a description of the work performed, and a brief description of each billing attorney's work

experience.  Defendants must also identify what percentage of the total time billed was spent

working on the IIED and defamation causes of action (*e.g.*, five percent of the total attorney time

was billed for work relating to the IIED and defamation causes of action).  Defendants must file their

request for attorneys' fees and costs within fourteen (14) days of the filing of this order.  Plaintiff

may file her response to Defendants' fees request within seven (7) days of the service of Defendants'

request.  No reply will be permitted.

### IV.  CONCLUSION

For the reasons described above, the Court rules as follows:

The Court **GRANTS** Defendants' anti-SLAPP motion to strike the fourth cause of action for

intentional infliction of emotional distress and the fifth cause of action for defamation.  Defendants

must file their request for attorneys' fees and costs within fourteen (14) days of the filing of this

order.  Plaintiff may file her response to Defendants' request for attorneys' fees and costs within

seven (7) days of the service of Defendants' request.  No reply will be permitted.

The Court **GRANTS** Defendants' motion to dismiss and dismisses all claims in the SAC

with prejudice for failure to state a claim.  The Court is aware that Plaintiff is pro se, and has

reviewed the allegations of the SAC liberally.  The Court already once granted Plaintiff leave to

amend, and specified how Plaintiff should amend her complaint to state a claim.  Doc. No. 38.  The

Court took oral testimony at the August 30, 2011 hearing to determine whether Plaintiff could allege

facts that would state a claim for relief if she were given leave to amend her complaint again.  Based

on the allegations of the SAC and Plaintiff's testimony, the Court concludes that granting leave to

amend would be futile.  Plaintiff cannot cure the defects in the SAC without contradicting the

//

//

allegations of her earlier complaints, the documents she attached to her earlier complaints, or her testimony at the hearing.

This case therefore is dismissed with prejudice. The Clerk of the Court is directed to close the case.

**IT IS SO ORDERED**.

Dated: September 9, 2011

_____

NANDOR J. VADAS
United States Magistrate Judge

**United States District Court**
For the Northern District of California